ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| HON. DANNY SANTIAGO NUÑEZ<br><br>Recurrido<br><br>V.<br><br>MUNICIPIO AUTÓNOMO DE VILLALBA Y OTROS<br><br>Peticionarios | KLCE202401400<br><br>CONSOLIDADO CON: | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: VI2024CV00217<br><br>Sobre:<br><br>Injunction Entredicho Provisional; Injunction Preliminar y Permanente |
|---|---|---|
| HON. DANNY SANTIAGO NUÑEZ<br><br>Apelado<br><br>V.<br><br>MUNICIPIO AUTÓNOMO DE VILLALBA Y OTROS<br><br>Apelantes | KLAN202500017 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: VI2024CV00217<br><br>Sobre:<br><br>Sobre: Injunction Entredicho Provisional; Injunction Preliminar y Permanente |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 5 de febrero de 2025.

Tenemos aquí dos recursos contra decisiones del Tribunal de Primera Instancia, Sala de Ponce (TPI) en el mismo caso. El primero presentado como Certiorari, fue contra una orden de Entredicho Provisional y el otro, que se denominó Apelación, pues se recurrió de una Sentencia de Injunction Preliminar en ese mismo caso, estando aún pendiente en este Tribunal de Apelaciones (TA) el recurso de Certiorari contra la Orden de

Entredicho Provisional emitido por el TPI, a la que se le asignó por la secretaría de este tribunal el número KLAN202401400, y luego se recurrió contra una denominada Sentencia de Injunction Preliminar y se presentó otro recurso, denominado Apelación, al que se le asignó el número KLAN20250001 y ambos recursos fueron consolidados por este foro.

Mediante Resolución de 9 de enero de 2025 consolidamos los recursos KLCE202401400 y KLAN202500017, conforme a la Orden Administrativa DJ2019-316, según enmendada.

Por razones que explicaremos más adelante, se toma conocimiento judicial que el Demandante en el TPI, y aquí recurrido o apelado en los casos consolidados que atendemos, Hon. Danny Santiago Núñez, tomó posesión del cargo de Alcalde del Municipio Autónomo de Villalba el pasado 13 de enero de 2025, y hoy continúa en funciones en dicha posición.

En el primer caso que se presentó en este Tribunal se emitió una Resolución contra una solicitud de Auxilio de Jurisdicción, que se incluyó conjuntamente con el recurso de Certiorari presentado el 27 de diciembre de 2024, y en esa misma fecha se emite Resolución denegando el Auxilio solicitado. Luego presentó la parte apelante, el 2 de enero pasado, una solicitud de Reconsideración a la Resolución denegando el Auxilio y mediante Resolución de la misma fecha de presentada la Reconsideración, se denegó por mayoría de los miembros que componían dicho panel especial.

El segundo caso se presentó el 7 de enero de 2024 contra una Sentencia de Injunction Preliminar, emitida y notificada a las partes ese mismo día. Esa Solicitud de Auxilio presentada conjuntamente con el recurso de Apelación, se denegó mediante Resolución del pasado 8 de enero de 2025.

El pasado 9 de enero de 2025 se emitió una Resolución consolidando ambos recursos y desde ese momento, en el epígrafe de este caso que representa dos casos consolidados, tienen que consignarse los números de ambos recursos consolidados.

Concedimos a la parte apelada un término para comparecer y nunca comparecieron ante nos, pero el caso ya se perfeccionó para ser resuelto, lo que aquí hacemos.

## I.

El 18 de diciembre de 2024 el Alcalde electo en las elecciones del pasado 5 de noviembre de 2024, en el Municipio de Villalba, Hon. Danny Santiago Núñez, presentó una Demanda Jurada ante el Tribunal de Primera Instancia, Sala de Juana Díaz, Región Judicial de Ponce, en la cual solicitaba la paralización de los efectos de la Resolución de la Legislatura Municipal del Municipio de Villalba, aprobada por el Alcalde de Villalba el 16 de diciembre de 2024, y que autorizaba la transferencia de $399,000.00 de distintas partidas dentro del presupuesto vigente en el ejercicio fiscal 2024-2025 para el Municipio de Villalba para poder desembolsar dichos fondos.[1]

El caso se atendió por una Sala del Centro Judicial de Ponce y esta, tomando en cuenta el estado de derecho vigente y la Demanda Jurada que tuvo ante sí, de inmediato emitió una Orden de Entredicho Preliminar y ordenó, además, que se diligenciara la misma no más tarde del 20 de diciembre de 2024, y además señaló vista en el caso para el 23 de diciembre de 2024. El 20 de diciembre de 2024 el TPI dictó una Orden procesal, previo a la vista pautada para el 23 de diciembre de 2024.

---

[1] Ver páginas 156-157 del Apéndice al recurso con el número KLCE202401400.

Se celebró la vista del 23 de diciembre de 2024 y en ella se tomó conocimiento de una Moción de Desestimación presentada por el Municipio de Villalba y la Contestación a la Demanda. El TPI le solicitó al Municipio una certificación que detallara los bonos que se pretendían pagar y estos sumaban, según la certificación, $176,563.49. La transferencia de partidas del presupuesto aprobada por la Legislatura Municipal era por $399,000.00.[2]

El 26 de diciembre de 2024 el TPI mantuvo la Orden de Entredicho Preliminar (sic) y extendió la paralización de los efectos de la transferencia aprobada hasta el 3 de enero de 2025, en que se convoca la Vista del Entredicho Preliminar, en la misma Orden del 26 de diciembre. Además, el TPI en su Orden, le fijó una fianza de $1,000.00 a la parte demandante "para responder por el pago de las costas y /o daños que pueda sufrir cualquier parte que resulte afectada mediante esta Orden."

Contra esa orden del 26 de diciembre de 2024 se presentó el denominado primer caso de los aquí consolidados, el 27 de diciembre de 2024, y en esa misma fecha se emitió Resolución denegando el Auxilio solicitado. Luego presentó la parte peticionaria el 2 de enero pasado, una solicitud de Reconsideración a la Resolución denegando el Auxilio y mediante Resolución de la misma fecha de presentada la Reconsideración, se denegó por mayoría de los miembros que componían dicho panel especial.

Luego, el 7 de enero de 2025, el TPI emitió, en el mismo caso al que antes hemos hecho referencia, una Sentencia de Injunction Preliminar. Ello fue después de celebrada la vista del 3 de enero de 2025 en la que el TPI ordenó argumentar por las

---

[2] Ver páginas 156-157 y 185-187 del Apéndice al recurso número KLCE202401400.

partes la Moción de Desestimación del Municipio de Villalba y además se presentó prueba documental. El Municipio de Villalba recurrió a este Tribunal mediante Apelación, contra dicha Sentencia de Injunction Preliminar presentado el mismo día de la notificación de esta. Este foro la evaluó de inmediato y el pasado 8 de enero del presente año emitió Resolución declarando No Ha Lugar la solicitud del Auxilio de Jurisdicción presentada conjuntamente con la apelación. Adicionalmente se le solicitó a la parte apelada comparecer.

En la Sentencia de Injunction Preliminar el TPI realizó las siguientes determinaciones de hechos:

1. La parte demandante (aquí apelada) es el alcalde electo por el Partido Nuevo Progresista para el Municipio de Villalba conforme al proceso electoral celebrado el 5 de noviembre de 2024, según la certificación de la Comisión Estatal de Elecciones.

2. El Municipio de Villalba ha estado administrado por alcaldes del Partido Popular Democrático por los pasados veinte (20) años.

3. Una vez conformado el comité de transición para la nueva administración del Municipio de Villalba, este solicitó a la administración saliente que presentara el Informe de Caja del municipio.

4. La administración saliente no proveyó toda la información solicitada.

5. El pasado 13 de diciembre de 2024, la administración saliente del Municipio Autónomo de Villalba, encabezada por el alcalde saliente, Luis Javier Hernández Ortiz, sometió para aprobación ante la Legislatura Municipal del Municipio Autónomo de

Villalba la Resolución con el propósito de transferir fondos entre partidas del presupuesto operacional vigente correspondiente al año fiscal 2024-2025.

6. La referida Resolución autoriza a la Directora de Finanzas del municipio a hacer transferencias por un total de $339,000.00. (sic)

7. La Resolución de la Asamblea Legislativa indicó que las partidas indicadas estarían destinadas a sueldos de empleados regulares, beneficios marginales, seguro social federal y recursos humanos hasta partidas generales y de gasto discrecional como "Vacaciones y Licencias Regular", "Bono de Navidad", "Relaciones Públicas" y "Misceláneos".

8. El Municipio de Villalba tampoco proveyó información sobre las proyecciones fiscales que permitan validar la viabilidad de estos movimientos presupuestarios.

9. A pesar de que la Resolución establece que "Luego de realizar un análisis detallado de las partidas de gastos operacionales del Municipio y las partidas relacionadas al pago de salarios y beneficios marginales al 31 diciembre de 2025 (sic), se determinó que existen partidas presupuestarias en varias dependencias en donde el gasto proyectado fue mayor al balance asignado, mientras en otras dependencias en que el gasto proyectado fue menor al balance disponible en la partida." El Municipio de Villalba no presentó ese análisis detallado al Comité de transición.

10. Posterior a la presentación del recurso y por orden del Tribunal; el Municipio de Villalba presentó una certificación de liquidaciones el 23 de diciembre de 2024 por la cantidad de $176,563.49 suscrita por

Dinorah Rosario Torres, Jefe de Sistemas y Joan A. Quiñones Milán, Directora de Finanzas Interina. Cuatro días después, el 27 de diciembre de 2024 el mismo Municipio de Villalba presentó otra certificación firmada por el Sr. Miguel A. Bonilla, Director Interino de la oficina de Recursos Humanos, donde se establece el presupuesto de liquidación, esta vez, por la cantidad de $321,939.83 que se desglosó en un total de $58,692.00 para salarios más $263,247.93 para liquidaciones.

11. El Municipio de Villalba presentó por primera vez una certificación de posición de caja, el 27 de diciembre de 2024 suscrita por Dinorah Rosario Torres, Jefa de Sistemas, al 31 de diciembre de 2024 que establece una disponibilidad en caja de $246,962.72.

12. La información provista por la misma parte demandada indica la posición de caja por $246,962.72. Al comparar esta cantidad contra el desglose detallado _ estimado de $321,939.83 solamente para liquidaciones; de proceder conforme a la Resolución del 13 de diciembre de 2024 por la Asamblea Legislativa de Villalba, habrá una deficiencia en caja de $74,977.11. Ello sin considerar las otras partidas tales como; Misceláneas, relaciones públicas entre las que propone la precitada resolución legislativa.

13. De proceder conforme a la Resolución de la legislatura y el desembolso según se presentó en dichas certificaciones, se verán afectadas las finanzas, y al menos habrá un perjuicio claro en la continuidad de

servicios y el pago de nómina a los empleados del Municipio.

Dicha denominada Sentencia Injunction Preliminar se emitió y notificó el 7 de enero pasado y contra la misma se presenta el mismo 7 de enero de 2025, un Recurso de Apelación juntamente con un Auxilio de Jurisdicción que se denegó mediante Resolución del 8 de enero de 2025.

En la Apelación se reclamaron los siguientes errores:

Primer Error: Erró el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la Solicitud de Injunction de la Parte Apelada donde ordena a la Parte Apelante de abstenerse con la ejecución de la Resolución de la Legislatura Municipal que autorizó la transferencia de fondos por $339,000.00 en clara violación del Código de Enjuiciamiento Civil de Puerto Rico, en su Artículo 678 (3), conocido como la Ley Anti-Injunction, así como de la Regla 57 de Procedimiento Civil de Puerto Rico.

Segundo Error: Erró el Honorable Foro A Quo al declarar Ha Lugar la Solicitud de Injunction de la Parte Apelada donde ordena a la Parte Apelante de abstenerse con la ejecución de la Resolución de la Legislatura Municipal que autorizó la transferencia de fondos por $399,000.00 en violación de la orden emitida por el Tribunal de Apelaciones de que se celebrase la Vista Evidenciaria de Injunction y por lo tanto, realizar determinaciones de hechos sin la presentación de prueba y de contrainterrogar los testimonios de la Parte Apelada.

Tercer Error:  Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda ante la ausencia de legitimación activa por parte de un alcalde electo que no es funcionario hasta que juramente.

Cuarto Error: Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda ante la ausencia de justiciabilidad al ser la controversia de marras una clara cuestión política.

Quinto Error: Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda que pretende intervenir con las decisiones de una legislatura municipal a pesar de que el alcalde electo no es legislador municipal y no ha superado la inmunidad parlamentaria que protege las decisiones políticas de los legisladores municipales.

Como antes indicamos, tomamos conocimiento judicial que el demandante en el TPI y aquí recurrido o apelado en los casos consolidados que atendemos, por conocimiento general en la

comunidad que el Hon. Danny Santiago Núñez, tomo posesión del cargo de Alcalde del Municipio Autónomo de Villalba el pasado 13 de enero de 2025 y hoy continúa en funciones en dicha posición.

Veamos.

## II.

## A.

El injunction es un recurso extraordinario dirigido a prohibir o a ordenar la ejecución de determinado acto, a los fines de evitar causar perjuicio inminente o daños irreparables a alguna persona jurídica o natural, en casos en que no hay otro remedio adecuado en ley. El también conocido como interdicto o *injunction* es un procedimiento especial dirigido a proteger al promovente de daños irreparables a su propiedad, facultad o a otros derechos mediante una orden que prohíba u ordene ejecutar ciertos actos; gobernado por la Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 57, y por los Artículos 675 a 689 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 3521-3566. Al emitirse, constituye un mandato judicial que requiere a una persona que haga o se abstenga de hacer o que permita hacer, determinada cosa que infrinja o perjudique el de otra. 32 L.P.R.A. sec. 3521. Este remedio extraordinario se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley vulnerado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. *Plaza Las Américas v. N&H*, 166 DPR 631, 643 (2005).

Es característica esencial del auto de *injunction* su vigencia inmediata a partir de la notificación de la sentencia; su eficacia descansa en su naturaleza sumaria y en su pronta ejecución. *Ortega Cabrera v. Tribunal Superior*, 101 DPR 612 (1973). *Id*. Los tribunales pueden tomar medidas específicas para eliminar la

perturbación, sin prohibir absolutamente la conducta del demandado. *Flores Berger v. Colberg*, 173 DPR 843 (2008).

El interdicto es un remedio discrecional que ha de concederse con cautela, luego que el promovente demuestre la existencia de los requisitos para su expedición y que el tribunal realice un balance de conveniencias y equidades. Véase, 32 L.P.R.A. sec. 3523; *Municipio de Loíza v. Sucn. Suárez. et. als.,* 154 DPR 333, 367 (2001). Entre los requisitos para su expedición se encuentran la irreparabilidad del daño, la no existencia de otro remedio adecuado en ley y la probabilidad de prevalecer. Sólo procede en situaciones claras en que las actuaciones del demandado menoscaban o afectan el derecho o facultad que el demandante interesa proteger o que pueden perjudicarlo. Véase, 32 L.P.R.A. sec. 3523(2); *E.L.A. v. Asoc. De Auditores*, 147 DPR 669, 679 (1999). Por ello, no procede la expedición de un interdicto para la protección de un derecho dudoso. 32 L.P.R.A. sec. 3523(1).

Por razón del origen del injunction en las Cortes de Equidad Inglesas, el principio de equidad que gobierna su concesión o denegación exige que la parte promovente demuestre la ausencia de un remedio adecuado en ley. Se estiman como remedios legales adecuados aquellos que pueden otorgarse en una acción por daños y perjuicios, en una criminal o cualquiera otra disponible con un resultado similar al de un injunction. Con relación a este remedio en equidad, constituye, por tanto, un daño irreparable aquél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. *Pérez Vda. De Muñiz v. Criado*, 151 DPR 355, 373 (2000); *Misión Industrial de P.R. v. Junta de Planificación*, 142 DPR 656 (1997). Por lo tanto, antes de expedir un injunction, ya sea preliminar o permanente,

el tribunal debe tomar en consideración la existencia o ausencia de algún otro remedio adecuado en ley que evite la expedición del injunction. *Pérez Vda. De Muñiz v. Criado*, supra, pág. 373.

Se ha establecido que un injunction sólo puede expedirse ante una intensa obstrucción que evite ejercer un poder asignado a una entidad gubernamental o la violación de un derecho a un ciudadano privado. Sólo cuando se aleguen y demuestren daños irreparables. El tribunal debe expedirlos en cada caso sopesando los intereses en conflicto y con un alto grado de equidad. *APPR v. Tribunal*, 103 DPR 903, 906 (1975).

Los criterios que deben considerarse al momento de evaluar la procedencia de un injunction preliminar y el permanente son los siguientes: 1) la naturaleza de los daños que pueden ocasionarse a las partes de concederse o denegarse; 2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; 3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; 4) la probabilidad de que la causa se torne académica de no concederse el injunction; y, 5) el impacto sobre el interés público del remedio que se solicita. *Ramírez Kurtz v. Damiani Ramos*, 2024 TSPR 97, 214 DPR ___ (2024); *Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304 (2008); *Pérez Vda. De Muñiz v. Criado*, supra, pág. 373; *P.R. Telephone Co. v. Tribunal Superior*, 103 DPR 200, 202 (1975); *Municipio de Ponce vs. Gobernador*, 136 DPR 776 (1994).

**B.**

De otro lado, sabido es que los tribunales sólo están llamados a atender asuntos de carácter justiciable. La doctrina de justiciabilidad exige la adjudicación de casos o controversias genuinas entre partes opuestas, que tienen un interés legítimo en obtener un remedio capaz de afectar sus relaciones jurídicas,

permitiendo, así, la intervención oportuna y eficaz de los tribunales. *López Tirado et al. v. Testigos de Jehová,* 177 DPR 893, 907-908 (2010); *E.L.A. v. Aguayo*, 80 DPR 554, 558-559 (1958). Este principio constituye una autolimitación al ejercicio del Poder Judicial de arraigo constitucional, que persigue evitar un fallo sobre una controversia inexistente, una determinación de un derecho antes de que el mismo sea reclamado, o una sentencia sobre un asunto que, al momento de ser emitida, no tendría efectos prácticos. *E.L.A. v. Aguayo*, supra. Así pues, el ejercicio válido del poder judicial sólo se justifica si media la existencia de una controversia real y sustancial. *Ortiz v. Panel F.E.I.*, 155 DPR 219, 251 (2001).

En virtud de lo anterior, se reconoce la doctrina de la *academicidad* como una vertiente del principio de justiciabilidad, cuyo efecto es acotar los límites de la función judicial. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 73 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Crespo v. Cintrón*, 159 DPR 290, 298-299 (2003). Como norma, un caso es académico "cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que esta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia." *C.E.E. v. Depto. de Estado*, 134 DPR 927, 935 (1993). De esta forma, los cambios fácticos acaecidos durante el cauce de determinado caso que tornen en ficticia su solución tienen el efecto de privar de jurisdicción al foro judicial. *Bhatia Gautier v. Gobernador;* supra; *C.E.E. v. Depto. de Estado*, supra; *E.L.A. v. Aguayo*, supra. Por tanto, el propósito de esta norma es evitar el uso inadecuado de los recursos judiciales y obviar la creación de precedentes innecesarios. *Bhatia Gautier v.*

*Gobernador,* supra; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 334-335 (2012); *P.N.P. v. Carrasquillo*, 166 DPR 70, 75 (2005).

"Por imperativo constitucional (ausencia de caso o controversia), o por motivo de autolimitación judicial, los tribunales [se deben abstener] de considerar los méritos de un caso cuando [determinen] que este se ha tornado académico." *Bhatia Gautier v. Gobernador,* supra, pág. 73. No obstante, el estado de derecho contempla las ocasiones en las que, a manera de excepción, la maquinaria judicial puede intervenir en un caso, aun cuando, a todas luces, el mismo sea académico. En tal contexto, constituyen excepciones a la norma de la academicidad los siguientes escenarios: 1) cuestión recurrente o susceptible de volver a ocurrir, y tendente a evadir la revisión judicial; 2) la situación de hechos ha sido modificada por el demandado sin visos de permanencia y; 3) cuando subsisten consecuencias colaterales vigentes. *Bhatia Gautier v. Gobernador,* supra*; U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 281 (2010). De este modo, ante situaciones concretas que permitan entrever los efectos propios a cada una de las aludidas circunstancias, los tribunales están facultados para asumir autoridad del asunto de que trate. De lo contrario, ante un caso académico, están impedidos de ejecutar las facultades adjudicativas que le asisten.

**C.**

Por su parte, es norma reiterada que los tribunales de justicia deben ser celosos guardianes de su jurisdicción, estando obligados a considerar tal asunto aún en defecto de señalamiento del mismo. *Mun. Aguada v. W. Construction*, 2024 TSPR 69; 213 DPR __ (2024); *Mun. De San Sebastián v. QMC Telecom*, 190 DPR 652 (2014); *Moreno González v. Coop. Ahorro Añasco*, 177 DPR 854 (2010); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873

(2007). La *jurisdicción* es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Freire Ruiz De Val. Y Otros v. Morales Román*, 2024 TSPR 129, 214 DPR ___ (2024); *Mun. Aguada v. W. Construction*, supra, *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 499-500 (2019); *Ruiz Camilo v. Trafon Group Inc.*, 200 DPR 254, 267-268 (2018). Por tanto, las cuestiones que le son relativas ostentan carácter privilegiado y deben resolverse con preferencia a cualesquiera otras. *Torres Alvarado v. Madera Atiles,* supra; *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 296 (2016); *S.L.G. Szendrey-Ramos v. F. Castillo*, supra.

La falta de jurisdicción no es susceptible de ser subsanada, por lo que, ante lo determinante de este aspecto, los tribunales pueden considerarlo, incluso, *motu proprio*. *Freire Ruiz De Val. Y Otros v. Morales Román*, supra; *Mun. De San Sebastián v. QMC Telecom*, supra; *Szendrey-Ramos v. F. Castillo*, supra; *García v. Hormigonera Mayagüezana*, 172 DPR 1, 7 (2007). Al amparo de dicha premisa, el estado de derecho les impone el deber ministerial e indelegable de evaluar los asuntos jurisdiccionales, puesto que inciden directamente en el poder de adjudicación que les asiste. Siendo de esta forma, ante una determinación de falta de jurisdicción, los tribunales solo vienen llamados a así declararlo. *Freire Ruiz De Val. Y Otros v. Morales Román*, supra; *Torres Alvarado v. Madera Atiles,* supra. Como secuela, únicamente procede que decreten la desestimación de la causa sometida a su escrutinio. *Íd; Freyre Ayala v. Vista Rent,* 169 DPR 418, 433 (2006). Tan trascendental es observar este principio que, un juez que actúe en ausencia clara de jurisdicción, podría quedar sujeto a la imposición de responsabilidad. *Stump v. Sparkman,* 435 US 349, 356-357 (1978).

**III.**

En la causa que nos ocupa, no hay controversia que desde el pasado 13 de enero de 2025, en que el demandante en el TPI, Hon. Danny Santiago Núñez, juró como Alcalde del Municipio Autónomo de Villalba, este tomó posesión de las funciones del puesto del Municipio contra el que había reclamado en el caso que el mismo ya fungía como Alcalde.

La representación profesional del Municipio de Villalba solicitó su relevo de dicha representación mediante Moción y los hemos relevado de continuar representando al Municipio Autónomo de Villalba y otros, mediante Resolución del pasado 23 de enero de 2025. Además, indicaron en dicha moción que era de conocimiento general que la nueva administración municipal comenzó funciones el 13 de enero de 2025.

Revisamos esa información en la red social de *facebook* del Municipio de Villalba y, en efecto, el demandante en esta acción, a esta fecha es el alcalde del Municipio de Villalba. Este hecho es de fácil corroboración, toda vez que el Artículo 1.012 del Código Municipal de Puerto Rico, 21 LPRA sec. 7022, dispone lo siguiente en cuanto a la Elección del Alcalde, a saber:

> El Alcalde será electo por el voto directo de los electores cualificados del municipio a que corresponda en cada elección general y **ocupará dicho cargo** por el término de cuatro (4) años, **contados a partir del segundo lunes del mes de enero del año siguiente a la elección general en que sea electo**, y ejercerá el cargo hasta que su sucesor tome posesión del mismo. Cuando el Alcalde electo no tome posesión de su cargo en la fecha antes dispuesta en este Código, se le concederá un término de quince (15) días adicionales para juramentar y asumir su cargo. (Énfasis nuestro).

De manera que, por disposición expresa del Artículo 1.012 del Código Municipal, el alcalde electo debe juramentar y asumir su cargo el segundo lunes de enero, esto es, para propósitos de este momento, desde el **13 de enero de 2025**, fecha que se

puede extender quince (15) días adicionales. La información obtenida nos permite concluir que, a esta fecha, el demandante ante el TPI y aquí apelado Hon. Danny Adriel Santiago Núñez, es quien ocupa el puesto del alcalde del Municipio contra quien dirigió la demanda que originó este caso.

Además de la Ley antes citada, también podemos tomar conocimiento judicial de ese hecho, según lo permite la Regla 201 (B) de las Reglas de Evidencia[3], 32 LPRA Ap. VI, por ser un asunto de conocimiento general dentro de la jurisdicción territorial del Tribunal. En fin, es un hecho de público conocimiento y de fácil corroboración[4], que el demandante, juramentó y luego celebró el acto de Toma de Posesión como Alcalde de Villalba. Por advenir el demandante en la misma posición que el Municipio demandado, nos vemos impedidos en dilucidar su reclamo, al ser de aplicación la doctrina de academicidad.

Este Tribunal perdió su jurisdicción sobre el asunto desde el momento mismo en que se produjo la juramentación del aquí recurrido como Alcalde pues en ese momento se confunden demandante y demandado ante el TPI y aquí se confunden Apelante y Apelado, sin que se hiciera presente algunas de las

---

[3] La Regla 201 de Evidencia, establece sobre el conocimiento judicial de hechos adjudicativos, lo siguiente:

(A) Esta Regla aplica solamente al conocimiento judicial de hechos adjudicativos.

(B) El Tribunal podrá tomar conocimiento judicial solamente de aquel hecho adjudicativo que no esté sujeto a controversia razonable porque: (1) es de conocimiento general dentro de la jurisdicción territorial del Tribunal, o (2) es susceptible de corroboración inmediata y exacta mediante fuentes cuya exactitud no puede ser razonablemente cuestionada.

(C) El Tribunal podrá tomar conocimiento judicial a iniciativa propia o a solicitud de parte. Si es a solicitud de parte y ésta provee información suficiente para ello, el Tribunal tomará conocimiento judicial.

(D) Las partes tendrán derecho a ser oídas en torno a si procede tomar conocimiento judicial. De no haber sido notificada oportunamente por el Tribunal o por la parte promovente, la parte afectada podrá solicitar la oportunidad de ser oída luego de que se haya tomado conocimiento judicial.

(E) El Tribunal podrá tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la apelativa.

(F) En casos criminales ante Jurado, la Jueza o el Juez instruirá a las personas miembros del Jurado que pueden, pero no están obligados a aceptar como concluyente cualquier hecho del cual haya sido tomado conocimiento judicial.

[4] Ver red social de Facebook del Municipio de Villalba.

causas de excepción a la doctrina de academicidad que nos permitiera disponer en contrario. Ante ello solo procede decretar que este caso se ha tornado en académico.

## IV.

Por los fundamentos que anteceden, se desestima el presente caso, pues la controversia que se dilucidaba en el mismo se tornó **Académica**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Domínguez Irizarry concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones